DAVIS, Circuit Judge,
concurring in the judgment:
The distinguished and experienced district judge in this case gave both sides an opportunity to present whatever argument they wished as to the appropriate sentence. The record reflects that both the government and the defendant took advantage of that opportunity. As a part of her argument, defense counsel stated:
[Ajfter the Booker case, the court is not bound by the guidelines, and I would suggest to the court that this is a prime example of the type of case where the guidelines do not take into consideration sufficiently the — all of the factors that are outlined in 18 U.S.C. 3553(a).
J.A. 42. The court then explained its perspective on the case and its underlying reasoning for imposing the sentence it did at some length, with sensitivity and a full awareness of the inevitably tragic circumstances surrounding virtually every criminal sentencing hearing. Here is what the court said:
The Court: Well, as in most criminal cases, there are tragic consequences for innocent victims. The court received a letter through defense counsel with pictures of the family from the young woman who is the mother of two children by this defendant, and I had a letter from her attesting to her love for the defendant and desiring that he come back home, all of which, of course, touch at the heartstrings of any individual, including an old seasoned judge. Nevertheless, the court has to remember that the crime that the defendant is before me on is illegal entry into the United States. I have determined, though I have not agreed with, that the guideline calculations are correct, and unless I find a reason for a departure from those guidelines, or a variance based on 18 U.S.C. section 3553, then I am obligated to pass a sentence within that guideline range. And upon reflection, this court is unable to determine a need for variance. The purposes of sentencing are to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.
As indicated by [the Assistant United States Attorney], this defendant has— this is his third illegal entry into the United States. So certainly [I] cannot say that the proposed guideline range fails to achieve those objectives .... to afford adequate deter[r]ence to criminal conduct. And the criminal conduct we are talking about, you must remember, is illegal reentry. It’s not the activity with the young woman who is now his mistress or common law wife or whatever. And I don’t really know what is adequate to deter his illegal entry to the United States. I mean, he has been deported. He is back. Been deported. He is back again.
And you might say on his behalf that he is coming back to be with the woman he loves and the children he loves.
But as [the Assistant United States Attorney] points out, he has a woman he loved, past tense, and children as a result of that relationship back in Mexico. So, I don’t — really don’t know what — I *221 can’t argue with the guideline range as far as providing adequate deterrence to protect the public from further crimes of the defendant, that crime being illegal entry. I don’t know that the guidelines will even do it then. Nothing else has up until now.
But in any event, the bottom line is that viewing it as objectively as I possibly can, I cannot see any rea son for a variance. So I feel that it’s my duty, though I have some sympathy for his — ■ the mother of his children down in Greenville and those children there, I am not too concerned about the assault charges there.... I have lived through too many Monday morning recorders ... court and district court hearings when women have taken warrants out against their husband or boyfriend for assault, and by the time Monday morning gets there, they come into court and say they want to- — -as back in those days, they want to take out the charges, they have kissed and made up.
So, I know it’s — it would be nice if that type of thing didn’t happen in our society, but as long as the people who are subjected to the messy domestic violence don’t pursue it and get it corrected themselves, there is little anyone else can do.
So, in any event, Mr. Mendoza-Mendoza, if you will stand up, please. Stand up. Except heretofore stated, the court finds the basis for findings contained in the presentence report credible, and therefore adopts those findings.
Based on those findings, the clerk calculated the range prescribed by the advisory sentencing guide lines. The court has considered that range as well as all other relevant factors set forth in the advisory sentencing guidelines, and those set forth in 18 U.S.C. Section 3553(a).
Pursuant to the Sentencing Reform Act of 1984 and in accordance with the Supreme Court decision in United States versus Booker, it’s the judgment of the court that the defendant, Dario Mendoza-Mendoza, be committed to the custody of the Bureau of Prisons for a term of 46 months.
J.A. 48-51 (alterations and emphasis added). It is not easy to discern a “procedural irregularity” in this record. The court referred to “Booker” and, separately, to the “advisory sentencing guidelines” several times in its soliloquy. Read in their entirety, the court’s comments reflect that it was aware that it possessed the authority to impose a sentence below (or above, for that matter) the applicable guidelines range.
Nevertheless, as we judges know as well if not better than most anyone, words matter. And the highlighted portion of the above excerpt from the sentencing transcript shows that the court employed the word “obligated” in a way that permits us, but does not compel us, to find a procedural irregularity and to remand for a new sentencing hearing. Unlike the majority, I do not “believe that the district court accorded the Guidelines a quasi-mandatory effect.” See Maj. Op. at 219. On the other hand, I cannot say that a remand to permit the court to clarify its language is unwarranted. Accordingly, I concur in the judgment.